United States of America      :
                                :
v.                                 :      **Case No. 3:05cr268**
                                :
John M. Lucarelli           :

## RULING ON MOTION FOR RECONSIDERATION ON JUDGMENT OF ACQUITTAL [DOC. # 185]

Familiarity with the factual and procedural background of this case is presumed.[1]  The Court's Ruling on Motion for Judgment of Acquittal or New Trial [Doc. # 183] assessed the import of the jury's "no" responses to the special interrogatory question asking:

> If you find the defendant guilty on any of Counts 2-4
> or 7-12, did you find the defendant participated in the
> fraudulent scheme with the specific intent to defraud:
> (a)  The Bank of property: YES____ NO ____
> (b)  Depositors of money or property: YES____ NO ____[2]

The Court concluded that in order to find defendant guilty of

---

[1] This includes the Court's ruling on the pre-trial motions of defendant John M. Lucarelli and his co-defendant Chance Vought, including motions to dismiss, see Ruling on Defendants' pending Motions [Doc. # 75], and the Court's Ruling on Motion for Judgment of Acquittal or New Trial [Doc. # 183], entering a Judgment of Acquittal for defendant Lucarelli on Counts 1 and 12 of the Indictment in light of the jury's special interrogatory answers on the Verdict Form, notwithstanding the jury's general verdicts of "guilty" on these counts.

[2] The purpose of this special interrogatory was to, in the event of a guilty verdict, make clear the target of the specific intent to defraud found proved by the jury (i.e., the New Haven Savings Bank and/or its depositors), for appellate and sentencing purposes.

conspiracy to commit mail/securities fraud (Count 1) and/or of
aiding and abetting securities fraud (Count 12), the jury was
required to find that defendant had the specific intent to
defraud the New Haven Savings Bank ("NHSB") and/or its
depositors, and that "given the jury's finding on the special
interrogatories that Lucarelli did <u>not</u> have a specific intent to
defraud either the NHSB or its depositors, it [could] be
ascertained that the jury misunderstood, or was not adequately
guided by, the instructions on the intent element of Counts 1 and
12." <u>See</u> Ruling at 5. The Court thus found that "considering
the Government's burden to prove each legal element of Counts 1
and 12, the jury's special interrogatory answers are tantamount
to an acquittal on both counts." <u>Id</u>. at 6.

The Government now moves for reconsideration, contending
that even assuming <u>arguendo</u> the correctness of the Court's
conclusions regarding the jury instructions and the finding of
the jury with respect to a specific intent to defraud, the
appropriate remedy is a new trial, not a judgment of acquittal.
<u>See</u> Mot. for Recon. [Doc. # 185]. The defendant opposes the
Government's Motion, seeking to distinguish the cases cited in
its memorandum and contending that where a jury has explicitly
found that the Government failed to prove an essential element of
a crime charged, such a verdict constitutes an acquittal. For
the reasons that follow, the Court will grant the Motion, but

will adhere to its original Ruling upon reconsideration.

## I.   Standard

"Because no rule of criminal procedure addresses motions for reconsideration, courts typically adopt the standards applied to such motions in civil cases."  United States v. Santora, CR-06-800 (SLT)(VVP), 2007 WL 527914, at *1 (E.D.N.Y. Feb. 14, 2007) (slip op.) (similarly, D. Conn. L. Crim. R. 1(c) states that D. Conn. L. Civ. R. 7(c), concerning motions for reconsideration, is applicable in criminal cases in the district).  As the Government acknowledges, that standard "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). Reconsideration is appropriate only "if there has been an intervening change in controlling law, there is new evidence, or a need is shown to correct a clear error of law or to prevent manifest injustice."  United States v. Sanchez, 35 F.3d 673, 677 (2d Cir. 1994).  The basis for the Government's Motion here can only be "to correct a clear error of law," because it presents no new evidence or new controlling law in its briefing.[3]

---

[3] The Government does cite an Eighth Circuit case that was issued after briefing concluded on defendant's Motion for Judgment of Acquittal or New Trial but before the Court issued

## II. Discussion

The gist of the Government's argument for reconsideration is that the remedy provided by the Court in its post-trial Ruling should have been to grant defendant a new trial, rather than to enter a judgment of acquittal, because by entering a judgment of acquittal the Court speculated about the meaning of the jury's special interrogatory answers and what it would have concluded had it been properly instructed on the specific intent element of both conspiracy and aiding and abetting, and that thereby the Court improperly substituted its judgment for that of the jury. The Government supports its position by citing cases where the jury rendered a verdict inconsistent with its special interrogatory answers and the remedy granted was a new trial. The Government's argument, however, is not persuasive, because those cases concerned circumstances where either the jury's finding on an essential element of the crime charged was in doubt/not reached unanimously or the jury rendered a truly inconsistent verdict where it was properly instructed on the essential elements of the crime, convicted the defendant of that crime, but answered a special interrogatory concerning an essential element of that crime in the negative. Here, by contrast, there is no indication that the jury's finding on a

_____

its Ruling.  Although not controlling authority, the Court
considers this opinion in its analysis below.

lack of specific intent to defraud was either ambiguous or non-unanimous and, moreover, as the Court found in its previous Ruling (and the Government accepts for purposes of its Motion for Reconsideration), the aiding and abetting and conspiracy instructions were not sufficiently tailored to the circumstances of this case with respect to the essential element of specific intent and thus its general verdict of "guilty" on Counts 1 and 12 and its special interrogatory answers cannot be said to be truly inconsistent.

Thus, turning to the cases cited by the Government which it claims demonstrate error by the Court in entering a judgment of acquittal rather than ordering a new trial, in <u>United States v. Mitchell</u>, 476 F.3d 539 (8th Cir. 2007), the defendant was indicted on two bankruptcy fraud counts and the verdict form contained special interrogatories related to each count.  With respect to the second count, "the district court posed an interrogatory . . . instructing the jury to 'place a check mark before the false representation(s) that you unanimously find beyond a reasonable doubt that the [d]efendant made. . . .' Here, three check boxes appeared, because the government alleged three separate false representations.  A second interrogatory appeared below, asking the jury if it 'unanimously [found] beyond a reasonable doubt that one or more of the false declarations, certificate, verification and statement under penalty of perjury

were 'material' matters. . . . The jury was simply asked to check 'yes' or 'no' in response. A final interrogatory, applicable only if the jury affirmed the materiality of the statements, asked the jury to specify which of the three statements were material." Id. at 542. The jury convicted the defendant of both counts, but in responding to the materiality interrogatory relating to the second count, "the jury checked the 'no' box, annotating that it could not make a unanimous finding beyond a reasonable doubt that one or more of the false statements was material." Id. ("[T]he jury was unable to find unanimously that the[] statements were material."). The district court granted the defendant a new trial on the basis of the interrogatory answers, but denied the defendant's motion to dismiss count two on double jeopardy grounds, which decision the Eighth Circuit affirmed on appeal. The Eighth Circuit explained, "double jeopardy is triggered when either (1) a jury acquits a defendant or (2) makes a factual finding beyond a reasonable doubt that would be fatal to the government's case." Id. at 544. As the jury had convicted the defendant, the first possibility was obviously inapplicable. The court determined that the second possibility for double jeopardy exposure was also inapplicable because it could not be determined whether or not the jury had unanimously found that the statements were not material: "[t]he language of the interrogatory itself [wa]s not susceptible to

discerning just what, specifically, the jury found; [the court] kn[ew] merely that it was unable to unanimously agree beyond a reasonable doubt that the statements were material." Id. at 545.

Here, by contrast, the jury did not indicate that it could not reach a unanimous decision as to whether or not Mr. Lucarelli had a specific intent to defraud the NHSB and/or its depositors, it rather unanimously responded "no" to both special interrogatories; the Court thus is not speculating about what the jury's conclusion on the specific intent element might have been – that conclusion is known.[4] The special interrogatory answers

---

[4] While the Government claims a lack of clarity as to whether the jury's finding was unanimous or not, unlike the special interrogatory in Mitchell which specifically queried whether the jury had "unanimously found" a certain fact proved (to which it answered "no," meaning "either (1) the jury unanimously found the statements immaterial, or (2) some jurors found the statements material and some jurors found the statements immaterial," 476 F.3d at 545 (emphasis added)), the special interrogatory in this case simply asked: "If you find the defendant guilty on any of Counts 2-4 or 7-12, did you find the defendant participated in the fraudulent scheme with the specific intent to defraud . . ." Moreover, the jury was explicitly charged in the "Conclusion" to the Jury Instructions:

> Your verdict, whether guilty or not guilty, must be unanimous. If you take a vote and it is not unanimous, you have not reached a final decision one way or another. If, at any time you take an inconclusive vote – a vote that is not unanimous – the vote is just that: inconclusive. If, in the final analysis, you are not able to reach a unanimous vote on one or more of the counts, you will not be able to find the defendant either "guilty" or "not guilty" on that count. In the event of an inconclusive vote on the count, there is no decision and no report on the verdict form. The result would then be a "hung jury" with respect to that count and that count would have to be retried before another jury.

Jury Instr. [Doc. # 112] at 74. Juries are presumed to follow

thus constitute "a factual finding beyond a reasonable doubt that would be fatal to the government's case," i.e., because specific intent to defraud was, as the Court previously concluded, an essential element of both Count 1 and Count 12.[5]

_____

the instructions given to them, see Richardson v. March, 481 U.S. 200, 211 (1987), and, notwithstanding that the jury was not specifically instructed with respect to the special interrogatory, the Court views this instruction on unanimity as sufficient to communicate to the jury that its "yes" or "no" answers to the special interrogatory questions, too, were required to be unanimous.

[5] The holding of United States v. Console, 13 F.3d 641 (3d Cir. 1993), also cited by the Government, is similarly inapplicable here. In Console, Console and his co-defendant were acquitted of certain mail fraud counts, the jury hung on other mail fraud counts and two RICO counts, and the trial court thus declared a mistrial as to the undecided counts. Before the second trial, Console moved to dismiss the remaining charges on double jeopardy grounds, which motion was denied, and he was convicted on both RICO counts and the remaining mail fraud counts on retrial. On appeal, he argued that the failure of the trial court to provide a special interrogatory form requiring jury findings on each of the more than 40 charged predicate acts to the RICO counts at his first trial resulted in a violation of his double jeopardy and due process rights. The verdict form sought responses from the jury on the 11 predicate acts that were also separately charged as substantive mail fraud offenses, but the remaining alleged predicate acts were not specifically queried, and thus the jury did not render a special verdict on any of those predicate acts. The Third Circuit rejected Console's appeal with respect to the RICO counts because he had neither been acquitted nor convicted on those counts at the first trial, and a retrial following a hung jury does not violate the protection against double jeopardy. Id. at 663. With respect to the requested predicate-act-special-interrogatory, the Third Circuit found that "even if the district court had submitted the requested special interrogatories to the jury and the jury had indicated that certain predicate acts had not been established, Console's reprosecution under RICO based on these predicate acts would not have violated his double jeopardy rights" because "[t]he double jeopardy clause protects against relitigation of an issue necessarily determined in the defendant's favor by a valid and final judgment," "[b]ut inasmuch as a response to a special

In *Pipefitters Local Union No. 562 v. United States*, 407
U.S. 385 (1972), defendants had been convicted of conspiring to
violate the federal statute prohibiting labor organizations from
making election contributions, and the appellate court rejected
their argument "that the special finding by the jury that a
willful violation of [the statute] was not contemplated
effectively resulted in acquittal, since such willfulness was an
essential element of the conspiracy under 18 U.S.C. § 371."  *Id*.
at 398.  The Supreme Court, in dicta, approved of the appellate
court's rejection, observing that defendants "not only failed to
object to the trial court's requirement that the jury return a
special finding as inconsistent with the general charge, but also
failed to move for acquittal on the ground [offered on appeal]
once the special finding was returned."  *Id*. at 400 n.11.  "More
important," the Supreme Court explained, "even assuming,
arguendo, the correctness of [defendant's] premise that knowledge
of the reach of [the federal statute regarding labor
organizations] was a requisite for conviction . . . [defendants]
would still be entitled at best to a new trial, not acquittal,"

---

interrogatory regarding an element of a 'hung' count is neither a
'final' judgment nor a determination 'necessary' to a final
judgment, such a response would not preclude the government from
relitigating an issue."  *Id*. at 664-65.  Here, by contrast, the
jury was not hung, it did not indicate that it could not reach a
unanimous conclusion with respect to the special interrogatory,
and nothing in the language of the questions posed in the special
interrogatory suggested that a "no" answer indicated a non-
unanimous conclusion rather than a unanimous "no" finding.

reviewing the nature of the substantive charge and finding "[i]n view of this instruction the jury's special finding may well have been inconsistent with its general verdict, but that, we hold, could require only reversal, not acquittal." Id.

The Government thus cites this case to support its contention that the appropriate remedy here is a new trial, rather than acquittal. This discussion in Pipefitters, however, can be distinguished from this case. First, unlike defendants in Pipefitters, defense counsel here requested a judgment of acquittal immediately upon being informed of the jury's verdict and special interrogatory answers. More importantly, the Pipefitters rationale assumes that the charge to the jury in that case on willfulness and knowledge, elements which the Pipefitters defendants argued were essential to a guilty finding, was correct and complete and that thus the jury's special finding there that a willful violation of the federal statute at issue "was not contemplated" was inconsistent with the general verdict of guilty. By contrast, here, the specific intent element instructions for each crime were insufficient, and the jury's special interrogatory answers merely illustrated that fact, rather than presented an inconsistent verdict. Because the jury was not specifically instructed that the intent required to be proved for guilt on either conspiring to commit mail/securities fraud or on aiding and abetting mail/securities fraud was

specific intent to defraud the Bank and/or its depositors, its guilty verdict on Counts 1 and 12 is not in conflict with (nor trumped by or accorded less weight than) the special interrogatory answers finding no specific intent to defraud either NHSB or its depositors.  Those specific answers thus constituted a valid finding on an essential element of those crimes.

Similarly, in Crawford v. Fenton, 646 F.2d 810 (3d Cir. 1981), also cited by the Government, the defendant had been found guilty of conspiring to violate New Jersey narcotics laws, but the state trial judge, believing the jury's answers to special interrogatories were inconsistent with the general guilty verdict, ordered the jury to continue its deliberations.  The jury had found the defendant guilty of the conspiracy, but in response to special interrogatory questions concerning the scope of the conspiracy and the type and amount of controlled substances involved, the jury found that the defendant had conspired to distribute a controlled dangerous substance, but that he had not conspired either to possess or to possess with intent to distribute a controlled dangerous substance, and also answered "no" on the questions of whether the controlled substance was either heroin or cocaine.  After another day, displaying confusion through questions to and other correspondence with the state trial court, the jury asked to be

released, and the judge declared a mistrial.  Prior to the
subsequent trial, the defendant moved to dismiss the indictment
on double jeopardy grounds, which motion the state trial court
denied.  The federal district court granted a writ of habeas
corpus finding that the double jeopardy clause of the Fifth
Amendment barred the defendant's retrial, and the Third Circuit
reversed, concluding that "the [state] trial judge did not abuse
his discretion in ordering an end to [the defendant's] trial.  In
doing so, he did not trench upon [the defendant's] Fifth
Amendment right to be free from double jeopardy."  Id. at 820.
The Third Circuit also observed that "if the jury verdict had
been accepted, [the defendant] would have been entitled, at most,
to a new trial."  Id. at 817 n.8 (citing Pipefitters, supra, for
the proposition that "when special interrogatories are
inconsistent with the general verdict, the petitioner would still
be entitled at best to a new trial, not acquittal").  Again,
however, there was no suggestion in Crawford of insufficient jury
instructions, and thus the general verdict could fairly be deemed
inconsistent with the special interrogatory answers.  Here,
because the charge on specific intent to defraud "did not suffice
for purposes of adequately guiding the jury in a case such as
this one," Ruling at 11, the jury's general verdict of guilty on
Counts 1 and 12 cannot be said to reflect a positive finding on
specific intent to defraud that is inconsistent with its special

12

interrogatory answers. Rather, the special interrogatory answers are the jury's conclusive findings that the Government's proof on the essential element of specific intent to defraud fell short.[6]

The Government also cites a handful of cases holding that erroneous jury instructions entitle a defendant to a new trial, but not a judgment of acquittal. See Gov't Mem. [Doc. # 185-2] at 11-15 (citing cases). These cases do not persuade the Court to alter its previous Ruling, however, because in this case,

_____

[6] The Government also cites United States v. Hoffer, 626 F. Supp. 786 (N.D. Ill. 1985), in which the defendant was convicted after trial of murder, voluntary manslaughter, and involuntary manslaughter, and the trial court entered judgment on the murder count. On appeal, the appellate court found the three verdicts legally inconsistent, reversed all convictions, and remanded for a new trial. The defendant then argued that his conviction for involuntary manslaughter should stand and that the State could not retry him for murder and/or voluntary manslaughter without violating the protection against double jeopardy, contending that by convicting him of involuntary manslaughter, the jury had impliedly acquitted him of the two other greater offenses. The federal district court, on a petition for writ of habeas corpus, found that "the doctrine of implied acquittal [did] not apply . . ., where the jury [] expressly convicted [him] on all the charges. . . . [B]ecause petitioner was expressly convicted of the greater offenses, the jury's verdict can be considered as either no verdict or multiple convictions. The verdict cannot be considered an acquittal." Id. at 789-90. The court reasoned, "[a]n 'acquittal' is a resolution in the defendant's favor of some or all of the factual elements of the offense charged. . . . Under no rational perspective can a jury's express finding of guilty be considered a factual resolution in the defendant's favor, and, therefore, an acquittal." Id. at 790. Here, there was a factual resolution in Lucarelli's favor – the special interrogatory answers – on an essential element of both crimes of which he was convicted and, as discussed above, that finding is not inconsistent with the jury's general verdict because that verdict was rendered following jury instructions which did not fully charge on the element of specific intent.

although the jury instructions were apparently insufficient to adequately guide the jury in rendering its general verdict on the issue of specific intent in this particular prosecution, the special interrogatory answers provided the vehicle for the jury to make its unanimous finding with respect to this essential element, albeit in a context separate from its consideration of the other elements of conspiracy and securities fraud.[7] That is, given the jury's interrogatory answers, it is impossible to conceive how the defendant would not have been acquitted had the essence of the interrogatory questions been incorporated into the Court's charges on conspiracy and aiding and abetting, thus explicitly directing the jury to the specific intent required in this case (i.e. specific intent to defraud the Bank and/or its depositors).  This is thus a case where double jeopardy is implicated because, as the Mitchell court described it, the jury "ma[de] a factual finding beyond a reasonable doubt that would be fatal to the government's case" on both Counts 1 and 12. Mitchell, 476 F.3d at 544.

## III. Conclusion

For the foregoing reasons, the Government's Motion [Doc. # 185] is GRANTED, but the Court adheres to its initial Ruling on

---

[7] And, indeed, the Court's and the parties' intent in posing the special interrogatory questions was to discern just this – that is, the nature/target of the defendant's specific intent to defraud found proved by the jury, if any.  See note 2, supra.

14

reconsideration thereof.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton
United States District Judge

**Dated at New Haven, Connecticut this 21st day of June, 2007.**